DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:06 CR 594 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Donnie Stewart, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  Introduction

The defendant, Donnie Stewart, was convicted of conspiracy with intent to distribute crack cocaine and sentenced in November of 2007 to ten years in prison.  Stewart prosecuted an appeal to the Sixth Circuit and argued that he had been denied, at the time of sentencing, the "safety-valve provision."   The prosecution and sentencing of the defendant was handled by the late Judge Ann Aldrich.

During the sentencing hearing, Judge Aldrich opined that she did not have the power to grant a two-level downward reduction based on the safety valve issue unless the government moved for such a reduction.  Apparently, Judge Aldrich was confused with respect to a downward departure based on substantial assistance which requires a government motion, and so she declined to grant the defendant the benefit of the safety valve provisions which would have eliminated the necessity for sentencing the defendant to the statutory minimum of ten years.  Consequently, the Sixth Circuit reversed and remanded this case for the Court to determine whether the defendant was entitled to the safety valve.

(1:06 CR 594)

## II.  The Procedures Before Judge Ann Aldrich

A.    The written Plea Agreement

The defendant, his counsel and the Assistant United States Attorney all signed the written

Plea Agreement on March 29, 2007.[1]  Paragraph 15 of the written Plea Agreement set forth the

factual basis for the written guilty plea and the text for the factual basis for guilty plea follows:

> The defendant agrees that if this matter were to proceed to trial, the
> United States could prove the following facts beyond a reasonable
> doubt, and that these facts accurately outline his readily provable
> offense conduct and specific offense characteristics:
>
> A.      Beginning at least as early as May, 2005, and continuing
> through December, 2006, the exact dates unknown, in the Northern
> District of Ohio, Eastern Division, and elsewhere, Donnie Stewart,
> aka Boom, the defendant herein, and the other indicted and
> unindicted co-conspirators in case # 1:06 CR 594, and others, did
> unlawfully, knowingly, and intentionally combine, conspire,
> confederate, and agree together and with each other, and with diverse
> others known and unknown, to possess with the intent to distribute
> and to distribute at least 50 grams, but less than 150 grams of a
> mixture or substance containing a detectable amount of cocaine base
> ("crack"), a Schedule II narcotic drug controlled substance in
> violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.
>
> B.      Specifically, it was part of the conspiracy that Donnie
> Stewart, aka Boom, would obtain amounts of cocaine or crack
> cocaine from various suppliers in the area between East 70th Street
> to East 79th Street between Saint Clair and Superior Avenues.
> Thereafter, Stewart would sell crack cocaine to his various customers
> on East 79th Street in Cleveland, Ohio.
>
> C.      In furtherance thereof and to effect the goals and conceal the
> existence of the conspiracy, the defendant and others performed overt

---

[1]The Presentence Investigation Report indicates that the defendant's plea of guilty to
Count 1 in the 95-count Indictment was entered before Magistrate Judge Nancy
Vecchiarelli on March 29, 2007.

2

(1:06 CR 594)

acts including but not limited to the following:

> 1.    On May 10, 2006, a CW called Donnie Stewart, aka Boom, at (216) 214-8516 and requested an amount of drugs.  Later, Stewart sold 119.21 grams of cocaine base ("crack") for $3,000.00 to the CW in the vicinity of Norwood Avenue, Cleveland, Ohio.

> 2.    On June 1, 2006, a CW called Donnie Stewart, aka Boom, at (216) 214-8516 and requested an amount of drugs.  Later, Stewart sold 30.56 grams of cocaine base ("crack") for $1,240.00 to the CW in the vicinity of Norwood Avenue, Cleveland, Ohio.

D.    The amount of cocaine base ("crack") possessed and distributed by Stewart during the course of the conspiracy and/or directly attributable to his actions and reasonably foreseeable within the conspiracy was at least 50 grams, but less than 150 grams. Stewart was aware that the substance he was possessing and distributing was actually cocaine base ("crack").

E.    The defendant acknowledges that the above outline of his conduct does not set forth each and every fact that the government could prove beyond a reasonable doubt, nor does it encompass all of the acts which he committed in furtherance of the offenses to which he is pleading guilty.

B.    The sentencing hearing conducted on November 29, 2007

No explanation in the record that the Court can find explains the eight month delay between the entry of the Defendant's guilty plea and the defendant's sentencing hearing which took place on November 29, 2007.[2]

### III.  The Prosecutorial Process Conduct by the Undersigned Judge Following the Remand from the Sixth Circuit

---

[2]The Presentence Investigation Report indicates that the defendant was released on an unsecured bond with pretrial conditions on January 1, 2007 and revoked on October 12, 2007 based on allegations of verbal threats to a co-defendant.

(1:06 CR 594)

The remand of the Sixth Circuit obviously required the Court to conduct an evidentiary hearing.  The first evidentiary hearing was conducted on Friday, October 29, 2010.  During the hearing, it became apparent to the Court that the defendant's trial lawyer, Donald Butler, had relevant testimonial knowledge regarding the issue that prompted the Sixth Circuit's remand.  Consequently, the Court requested that Debra Hughes, an Assistant Federal Public Defender, represent the defendant during both evidentiary hearings conducted on October 29 and November 5, 2010.

Following the second evidentiary hearing, the Court requested transcripts of the two hearings and invited subsequent briefing on the issue of whether the Court should grant the defendant the safety valve which would permit the Court to sentence the defendant to less than the mandatory minimum sentence of ten years.

At the conclusion of the second evidentiary hearing, the Court instructed the United States Marshal to return the defendant to his place of incarceration because it was apparent that the Court's decision as to whether to grant the safety valve provision would be delayed pending the filing of the transcripts of the two evidentiary hearings and the subsequent briefing.  The transcripts have now been filed and the briefs filed by the government opposing the safety valve and the brief filed by the defendant supporting the application of the safety valve have been filed.  The case is now at issue.

### IV.  The Safety Valve Provisions Set Forth in the Sentencing Guidelines

Section 5C 1.2 of the Sentencing Guidelines provides that in the event a defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with

4

(1:06 CR 594)

the applicable guidelines without regard to any statutory minimum sentence.  The five criteria as summarized follow:

1)      the defendant does not have more than 1 criminal history point ...

2)      the defendant did not use violence or creditable threats of violence or possess a firearm or other dangerous weapon ... in connection with the offense

3)      the offense did not result in death or serious bodily injury to any person

4)      the defendant was not an organizer, leader, manager, or supervisor of others in the offense ...

5)      not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

<u>V.  The Position of the Government In Opposing
Application of the Safety Valve Provision</u>

Counsel for the government concedes that the defendant met the first four criteria set forth in the safety valve provision, but failed with respect to the fifth criteria on the premise that the defendant was not fully forthcoming with respect to information involving the massive conspiracy alleged in the Indictment in this case.[3]

---

[3]A copy of the Indictment, as initially filed on December 20, 2006, naming 43 defendants allegedly involved in this conspiracy, is attached hereto as **Appendix I**.

5

(1:06 CR 594)

As a part of the prosecution in this massive case, the government produced a document, attached hereto as **Appendix II**, entitled "Seven All's Drug Conspiracy" and picturing eight defendants as upper-level drug dealers. The defendant is pictured as a "upper-level drug dealer." The document then portrays the photographs of 18 additional defendants described as mid-level drug dealers. The final series of photographs identifies 30 lower-level street dealers and declares that the total sentences for the members of the Seven All's Drug Conspiracy total 229 years and two months.

VI.  A Summary of the Testimony in the Two Hearings
Conducted by the Undersigned Judge

1.     Trial counsel for the defendant, Donald Butler, testified during the hearing conducted on Friday, October 29, 2010. A transcript of his testimony begins at page 71 and concludes at page 79 and is attached hereto as **Appendix III**.

2.     A primary witness for the government was special Agent Robert Riddlebarger. In the process, he produced, at the Court's request, the Form 302 Report prepared by Riddlebarger four days after the interview/proffer of the defendant on April 13, 2007. A copy of the Form 302 is attached hereto as **Appendix IV**.

VII.  Analysis

The Sixth Circuit has continually recognized that a district court's decision as to whether the safety valve is applicable is largely dependent on the district court's credibility determination.  *United States v. Stewart*, 391 Fed. App'x 490, 496 (6th Cir. 2010); *see also United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996) ("this determination 'is a fact-specific one

6

(1:06 CR 594)

and will often depend on credibility determinations that cannot be replicated with the same

accuracy on appeal'") (*quoting United States v. Rodriguez*, 69 F.3d 136, 144 (7th Cir. 1995)).

The initial burden of proof is on a defendant to demonstrate by a preponderance of the

evidence that he is eligible for the safety valve reduction. *Adu*, 82 F.3d at 124. "Once he has

made this showing, however, it falls upon the government 'to show that the information the

defendant has supplied is untrue or incomplete.'" *United States v. Martinez-Villegas*, 993 F.

Supp. 766, 773 (C.D. Cal. 1998) (quoting *Shrestha*, 86 F.3d at 940).

On April 13, 2007, Defendant with his trial counsel Donald Butler proffered information

to two FBI agents (Special Agent Robert P. Riddebarger and Special Agent H. Douglas

Williams).  The proffered interview was not recorded pursuant to FBI policy.  During his proffer,

Defendant offered information on his role in the conspiracy, his immediate chain of distribution

including the street name of his cocaine dealer, indentified the person who taught him how to

manufacture crack cocaine, the names of some of his largest crack purchasers as well as his

relevant knowledge of co-conspirators he recognized from the government produced document

(**Appendix II**) or street names, and his knowledge of other drug dealers in the neighborhood.

*See* **Appendix IV**; *see also United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997) ("Every

court which has considered the issue has held that § 5C1.2 requires a defendant to provide

complete information regarding the immediate chain of distribution"); *United States v.*

*Arrington*, 73 F.3d 144, 148 (7th Cir. 1996); *United States v. Ivester*, 75 F.3d 182, 184 (4th Cir.

1996); *United States v. Romo*, 81 F.3d 84, 85 (8th Cir. 1996); *United States v. Shrestha*, 86 F.3d

935, 939 (9th Cir. 1996); *United States v. Thompson*, 81 F.3d 877, 879-80 (9th Cir. 1996);

7

(1:06 CR 594)

*United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995); *Rodriguez*, 69 F.3d at 143;

*United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995).

Defendant's case can be distinguished from similar cases, where the defendant did not provide all relevant truthful information to the government. *See Adu*, 82 F.3d 119, 121 (the defendant merely provided a one-page note to a probation officer); *Maduka*, 104 F.3d at 894 (the defendant would not provide anyone else's name in his distribution chain and his testimony contradicted a conversation with an undercover informant); *United States v. Pena*, 598 F.3d 289, 291 (6th Cir. 2010) (the defendant's attorney conceded that his client knew of the requested information but refused to provide it to the government because he feared retaliation); *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (the defendant only disclosed the lawful aspects of growing marijuana and did not provide any information regarding his co-conspirators); *United States v. Salgado*, 250 F.3d 438, 459-60 (6th Cir. 2001) (the government could provide direct evidence to show the defendant's statements were untruthful); *United States v. Dottery*, 259 Fed. App'x 812, 816-17 (6th Cir. 2008) (the government gave the defendant multiple opportunities to comply with the safety valve requirements but he did not show up to the first few and when he finally attended a session he would not name the source of his crack cocaine); *United States v. Polson*, 343 Fed. App'x 88, 94 (6th Cir. 2009) (the defendant provided the probation officer with a complete but completely conflicting version of the events then what he provided in his initial statement after arrest).

The testimony of Donald Butler provided additional evidence supporting the credibility of Defendant's proffer:

8

(1:06 CR 594)

> Q. Okay. Mr. Butler, did Mr. Stewart testify here today before Judge Dowd anything that you wish to dispute or correct in any way?
>
> A. No, because I think it's what he's been saying the entire time he's been going through this experience, that he sold drugs, he was involved with certain individuals, but he wasn't connected to the people that the government was trying to connect him with. And he says -- and I think he told them that, hey, I'm going to tell you what I know. And I can't speak for anyone else. And I think he repeated that constantly, not just in the proffer but he repeated it to me before we even went to the proffer, he said it in the proffer, he said it in the courtroom that he wasn't going to vouch or speak on something that he didn't have any connection with, and that if people wanted to speak against him, that was their prerogative, but he knew it was untrue.
>
> Q. So from the time you began to represent Mr. Stewart until today, has his story changed to you regarding who he was involved with and what he did in this conspiracy?
>
> A. It's been the same. He accepted responsibility for his actions right away.

**Appendix III**.  Attorney Butler's testimony supported Defendant's statements and reaffirmed that Defendant persistently claimed that although he sold crack cocaine, Defendant was neither a member of the "Seven Alls/All Seven Up" gang nor professionally connected with the other drug dealers in the neighborhood.[1]

During Defendant's testimony, he reasserted that he did not have knowledge of any more relevant information concerning the conspiracy.  The Court notes that the Defendant acknowledged his acceptance and responsibility in the presentence report when he stated:

---

[1] Defendant appears to be a novice in the business of drugs.  Similar to Defendant in *United States v. Sanchez*, he acted as a novice in handling these transactions by speaking and meeting with a total stranger, only recently learning how to manufacture crack cocaine and not understanding the value difference between pure cocaine powder and crack cocaine.  *United States v. Sanchez*, 925 F. Supp. 1004, 1009 (S.D.N.Y. 1996) ("It is therefore not surprising that Sanchez would know only the first name of the man who supplied him with the funds and to whom he intended to turn over the drugs").

(1:06 CR 594)

> First of all I would like to own up to my mistakes I am sorry for the crime that I committed. I made a big mistake by selling drugs to the informant. I am not mad at him or anything like that. The informant came up to me on several occasions asking me do I know where to get drugs from. I told him I knew somebody and would get it for him and that basically was it. I knew the informant all my life. I went and got the drugs for a cheaper price and then sold it to him, I was just trying to make a profit of $100 or $200. Don't get me wrong, I am no angel or nothing like that. I did what I did so I can take care of my family and pay bills. I know it was wrong to do the things I was doing, and again I am sorry for the crime I committed and for any problems that I may have caused. I am not a disrespectful person and I love my family and friends. I never did nothing directly to harm anyone or indirectly. I sold drugs and I am sorry for my actions.

ECF No. 818.

Throughout Defendant's proffer, his discussions with his counsel and during the evidentiary hearing, Defendant maintained he was without knowledge of certain people and would not falsify such information. Where Defendant "could not reasonably have known of the relevance of certain information, the benefits of hindsight will not normally disqualify him from safety-valve relief." *United States v. Miller*, 179 Fed. App'x 944, 948 (6th Cir. 2006); *see also United States v. Mejia-Pimental*, 477 F.3d 1100, 1106 (9th Cir. 2007) ("[A]s long as a defendant's ultimate proffer is truthful and complete, he has satisfied the fifth safety valve criterion"); *United States v. Tafolla-Gonzalez*, 393 Fed. App'x 502, 505 (9th Cir. Idaho 2010) ("Thus, a defendant can satisfy this burden by simply saying he did not know anything, provided he is being truthful").

Although the government hoped Defendant would be able to provide certain information, the government cannot prevent application of the safety valve simply because Defendant failed to disclose a certain fact. *United States v. Miller*, 179 Fed. App'x 944, 948 (6th Cir. 2006).

(1:06 CR 594)

Defendant does not have to prove "he disclosed a certain fact or lose the safety valve," *Id.*, instead he must provide what relevant knowledge he has and clearly communicate to the government that he does not possess any other information. *Shrestha*, 86 F.3d at 939 (*citing Rodriguez*, 69 F.3d at 143). Furthermore, Defendant is not required to disclose "all minutiae" information regarding the events of the offense:

> Implicit in requiring a defendant to disclose "relevant" facts is the defendant's having reason to believe them relevant. Thus, where, as here, the defendant could not reasonably have known of the relevance of certain information, the benefits of hindsight will not normally disqualify him from safety-valve relief. Otherwise defendants would be encouraged to inundate investigators with trivial details having no obvious connection with the offense of conviction or course of conduct, which would be counter-productive to governmental efforts to identify pertinent information.

*Miller*, 179 Fed. App'x at 947-48.

While the government contends that discrepancies exist in Defendant's statements, it fails to show the information Defendant provided was untrue or incomplete. *Martinez-Villegas*, 993 F. Supp. at 773. The government bases its assessment of Defendant's credibility on information proffered from gang members[2] and its agents' opinions. While the government recommendation is invaluable, it is nonetheless not dispositive in safety valve reduction cases. *Stewart*, 391 Fed. App'x at 494 ("Although a government motion is necessary for a substantial-assistance departure, it is not necessary for safety-valve relief").

Even if Defendant's testimony at the evidentiary hearing was inconsistent with his pretrial proffer, "the fact that [he] told the government all the information [he] knew before [his]

---

[2] The accuracy and credibility of the other co-conspirators' proffers is unknown. The Sixth Circuit noted that at least one co-defendant, John Robinson, was untruthful during his proffer. *Stewart*, 391 Fed. App'x at 496.

(1:06 CR 594)

sentencing is enough for [him] to meet the requirement for the safety valve." *United States v. Allen*, 2007 U.S. App. Lexis 21592, at *11 (6th Cir. 2007); see *also Briggs v. United States*, 187 Fed. App'x 540, 545 (6th Cir. 2006).  Furthermore, Defendant was neither deceitful nor evasive during his proffer.  During his evidentiary hearing Defendant was open and readily admitted he had no issue with providing information about others, only explaining to the government that he would not provide false information about people.  Given that he was not a member of the "Seven Alls/All Seven Up" gang and since he truthfully provided all the information he could in order to possibly receive a sentence reduction, Defendant had no reason to conceal information that would have aided his situation.  *Miller*, 179 Fed. App'x at 948.

The only area of dispute between the parties is whether Defendant truthfully proffered all relevant information within his knowledge.  Since the government failed to record the actual proffer session and provided little more than hearsay from gang members and the government's opinion on whether Defendant was complete and truthful in the information he provided, the Court must rely on its credibility determination of the Defendant's statements.

Defendant's consistency in the information he provided, his small role in the conspiracy, the lack of connection to the "Seven Alls/All Seven Up" gang, his immediate acceptance of responsibility, his testimony of the chain of distribution, and the testimony of his trial counsel Donald Butler corroborates his account.  Thus, the Court finds Defendant's statements credible. The Court finds that the defendant has met his burden of proof through a preponderance of the evidence and that during his proffer the Defendant truthfully provided all the relevant information within his knowledge.  *Adu*, 82 F.3d at 123.  Furthermore, the Court finds that the

12

(1:06 CR 594)

government failed to show that the information the defendant produced was either untrue or incomplete.

<u>VIII.  Conclusion</u>

For the foregoing reasons, the Court finds that the defendant is entitled to the safety valve which requires resentencing.

The Court schedules the resentencing hearing for July 28, 2011 at 1:00 PM.

The United States Marshal is directed to return the defendant to the District in advance of the sentencing hearing and to notify Defendant's counsel when the defendant has been returned to the District.


IT IS SO ORDERED.


  June 22, 2011                              /s/ David D. Dowd, Jr.
Date                                     David D. Dowd, Jr.
                                         U.S. District Judge

13